Teresa C. Chow, Bar No. 237694
*tchow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

Matthew D. Pearson, Bar No. 294302
*mpearson@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone:  303.861.0600
Facsimile:   303.861.7805

Attorneys for Defendant
ABM INDUSTRIES INCORPORATED
(erroneously sued as ABM INDUSTRIES, INC.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELIA DAVILA, individually and on behalf of similarly situated individuals, | Case No.: |
| Plaintiff, | **NOTICE OF REMOVAL** |
| v. | [Filed Concurrently with Civil Cover Sheet; Notice of Interested Parties; and Notice of Pendency of Other Actions or Proceedings] |
| ABM INDUSTRIES, INC., a Delaware corporation; AMERICAN BUILDING MAINTENANCE CO., a Business Entity Form Unknown; ABM ONSITE SERVICES WEST, INC., a Delaware Corporation; ABM SERVICES, INC., a Business Entity Form Unknown; and DOES 1 through 100, inclusive, | Action Filed:        March 22, 2018 Complaint Served:   April 18, 2018 |
| Defendant. | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, ABM Industries Incorporated (erroneously sued as ABM Industries, Inc.) ("ABM") removes the action filed by Evelia Davila ("Plaintiff") in the Superior Court of the State of California, County of Los Angeles, Central District, Case No. BC699176, to the United States District Court for the Central District of California.

## JURISDICTION AND VENUE

1.     This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005, codified in part at 28 U.S.C. Section 1332(d).

2.     This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a) and 1446(a).

## THE ACTION & TIMELINESS OF REMOVAL
## FACTUAL AND PROCEDURAL BACKGROUND

3.     On March 22, 2018, Plaintiff, purportedly on behalf of herself and all others similarly situated, filed a Class Action Complaint (the "Complaint") against ABM and against American Building Maintenance Co. (ceased to exist as of May 1, 2008), ABM Onsite Services – West, Inc. (erroneously sued as ABM Onsite Services West, Inc., ceased to exist as of January 1, 2017), and ABM Services, Inc. (ceased to exist as of January 1, 2017) in the Superior Court of the State of California, County of Los Angeles, Central District, Case No. BC699176, (the "State Court Action").  Plaintiff filed the Complaint as a putative class action.

4.     On April 18, 2018, Plaintiff served ABM with copies of the Summons, Complaint, and related Court documents by personal delivery (the "Complaint").  A true and correct copy of the Complaint is attached to this Notice of Removal as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Exhibit "A".

2        5.      This removal is timely under 28 U.S.C. § 1446(b) because Defendant

3    filed this removal within 30 days of being served with the Complaint.  *See Murphy*

4    *Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for

5    removal begins when the defendant is served).

6                            **CAFA JURISDICTION**

7        1.      <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction over

8    this action under the Class Action Fairness Act of 2005 ("CAFA") (codified in

9    pertinent part at 28 U.S.C. § 1332(d)).  Section 1332(d) provides that a district court

10   shall have original jurisdiction of a class action with one hundred (100) or more

11   putative class members, in which the matter in controversy, in the aggregate,

12   exceeds the sum or value of $5 million.  Section 1332(d) further provides that

13   where, as here, the putative class members are citizens of the state in which the

14   action was filed, the defendant must be a citizen of a different state.

15       2.      As set forth below, pursuant to 28 U.S.C. § 1441(a), ABM may

16   remove the State Court Action to federal court under the Class Action Fairness Act

17   of 2005 because:  (i) this action is pled as a class action; (ii) the putative class

18   includes more than one hundred (100) members; (iii) members of the putative class

19   are citizens of a state different from that of ABM; and (iv) the matter in

20   controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of

21   interest and costs.

22               **THE ACTION IS PLED AS A CLASS ACTION**

23       3.      CAFA defines a "class action" as "any civil action filed under rule 23

24   of the Federal Rules of Civil Procedure or similar State statute or rule of judicial

25   procedure authorizing an action to be brought by 1 or more representative persons

26   as a class action."  28 U.S.C. § 1332 (d)(1)(B).

27       4.      Plaintiff seeks class certification under California law pursuant to Civil

28   Code § 1781. [Compl. ¶ 34.] The "pertinent sections of [Rule 23 and Civil Code §

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  1781] are nearly indistinguishable." *Pickman v. Am. Exp. Co.*, No. C 11-05326

2  WHA, 2012 WL 258842, at *2 (N.D. Cal. Jan. 27, 2012) Thus, the first CAFA

3  requirement is satisfied. [Compl. ¶ 10 ("This Court has jurisdiction over this action

4  because it is a class action….").]

5  ## THE PUTATIVE CLASS INCLUDES AT LEAST 100 MEMBERS

6       5.     Plaintiff alleges that "[o]n or around August 1, 2017, a major

7  cybersecurity breach ["Cyberattack"] was discovered…by ABM." [Compl. ¶ 15.]

8  According to Plaintiff, the "several AMB [sic] employees clicked on…phishing

9  emails and entered their credentials," which "allowed a third party/parties to access

10  Plaintiff and class members PII."[1] [*Id*. at ¶ 16.] More specifically, Plaintiff alleges

11  that her and the "Class Members' PII has been compromised through AMB's [sic]

12  negligent and reckless actions." [Id. at 20.]

13       6.     Plaintiff purports to bring this action on behalf of a nationwide class

14  (the "Class") and a California-specific putative subclass (the "Subclass"). [Compl. ¶

15  34.] Plaintiff defines the Class as: "All employees and former employees of

16  defendant ABM (defined above) residing nationwide whose PII (defined above)

17  was disclosed in the data breach in 2016-017…." [*Id*.] Plaintiff defines the

18  putative Subclass as: "All employees and former employees of defendant ABM

19  (defined above) residing in California whose PII (defined above) was disclosed in

20  the data breach in 2016-017…." [*Id*.]

21       7.     Plaintiffs alleges that although she "does not know the exact number of

22  members of [t]he Class," she believes there to be "many thousands." [Compl. ¶

23  35.]

24       8.     Furthermore, ABM sent breach notification letters to 104,882

25  individuals whose confidential information was in ABM's possession at or near the

26  time of the Cyberattack. Of those 104,882 notified individuals, 32,618 had

27  

28  [1] Plaintiff defines "PII" in paragraph 2 of the Complaint as "Private Identifiable
Information."

California addresses.

9.      Therefore, based on Plaintiff's own allegations and the number of individuals who received breach notification letters, the number of putative class members exceeds the statutorily required minimum of 100.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

*10.*      Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class which . . . ***any member of the class of plaintiffs*** is a citizen of a State different from ***any defendant***." (emphasis added). *See also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) ("One way to satisfy minimal diversity is by demonstrating that any member of a class of plaintiffs is ... a citizen or subject of a foreign state and any defendant is a citizen of a State.") (internal citations omitted).

11.      Plaintiff's Citizenship.  As alleged in the Complaint, Plaintiff is and "at all relevant times to this action…was a resident of Los Angeles County, State of California." [Compl. ¶ 5.]  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F. 3d 514, 520 (10th Cir. 1994).  Accordingly, Plaintiff is a citizen of the State of California.

12.      ABM's Citizenship.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center."  *Hertz Corp. v. Friend*, 130 S. Ct.  1181, 1192 (2010).  "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters."  *Id.*  "The public often (though not always) considers it the corporation's main place of business."  *Id.* at

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1193.

13.     ABM is a corporation formed and incorporated under the laws of the State of Delaware.

14.     Pursuant to *Hertz*' nerve center test, ABM has its principal place of business in New York.  Specifically, ABM's headquarters are located at One Liberty Plaza, 7th Floor, New York, NY 10006.  Accordingly, ABM is a citizen of the States of Delaware and New York.

15.     As established in Paragraphs 12-14 above, minimal diversity of citizenship is established, pursuant to CAFA, because Plaintiff is a citizen of California and ABM is a citizen of Delaware and New York.

**THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[2]**

16.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B).  The Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet this threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

*17.*     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

18.     Claim for Negligence.  Plaintiff alleges that "upon accepting Plaintiff and the Class Members' Private Identifiable Information in their system, ABM undertook and owed a duty to Plaintiff and the Class Members to exercise reasonable care to secure and safeguard that information from being

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

compromised...." [Compl., ¶ 40.]  Plaintiff further alleges that ABM's duty "included, among other things, designing, maintaining, and testing ABM's security systems to ensure that Plaintiff and the Class Members' PII was adequately secured and protected."  [*Id.*]  Additionally, Plaintiff alleges that ABM had a duty to "timely disclose to Plaintiff and the Class Members that their Private Identifiable Information had been or was reasonably believed to have been compromised."  [*Id.* at ¶ 42.]

19.    Plaintiff claims that ABM breached its duties to her and the Class by (1) "failing to discover the security breach within a reasonable time;" (2) "failing to notify Plaintiff and the Class Members of the breach until March 2018;" (3) "knowingly disregarding standard information security principles, despite obvious risks;" (4) "allowing unmonitored and unrestricted access to unsecured PII;" and (5) "failing to provide adequate supervision and oversight of the PII with which it is trusted, in spite of the known risk and foreseeable likelihood of breach and misuse." [*Id.* at ¶¶ 43-44.]  Plaintiff alleges that, in light of the above, ABM was "grossly negligent and departed from all reasonable standards of care...." [*Id.* at ¶ 49.]

20.    As a result of the Cyberattack, Plaintiff alleges that she and the Class' suffered damages, including by (1) being "placed at an imminent, immediate, and continuing increased risk of harm from identify theft and identity fraud;" (2) being "requir[ed] to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing 'freezes' and 'alerts' with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts of unauthorized activity;" (3) having their privacy invaded; (4) losing the value of their PII, "for which there is a well-established national and international market;" and (5) making "overpayments to ABM for credit reporting services during the subject data breach in that a portion of the price paid for such services by Plaintiff and Class Members to ABM was for the costs of reasonable

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

and adequate safeguards and security measures that would protect employees' and former employees' PII, which ABM did not implement…"  [Compl., ¶¶ 32-33.]

21.    Plaintiff does not allege the amount in compensatory damages she and the Class allegedly sustained as a result of ABM's alleged negligence.  However, an estimate of the valuation of the "time and effort" Plaintiff and the Class spent "monitoring their credit reports and accounts of unauthorized activity" is the cost of credit monitoring services.  In fact, in a currently pending putative class action filed against ABM in Illinois that is based on the same Cyberattack giving rise to the instant action and that seeks to represent the same putative class members, the plaintiff has affirmatively prayed for credit monitoring.[3]

22.    Three identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $9.99 to $14.95 per person.[4] Similarly, Experian offers an identity-theft protection product that includes social security number and bank account and credit card takeover monitoring for $19.99 per month per person.  Multiplying the cost of providing one year of credit-monitoring services at $9.99 by the number of individuals who received a notification, the amount in controversy for just credit monitoring is approximately $12,573,254 (calculated as: 104,882 individuals notified, times 12 months, times $9.99).

23.    <u>Claim for Violation of California Unfair Competition Law ("UCL"),</u>

---

[3] The Illinois action is captioned *Wade v. ABM Industries Incorporated,* Case No. 1-18-cv-02940 (N.D. Ill. 2018).  A true and correct copy of the *Wade* Complaint is attached hereto as Exhibit "B".

[4] https://www.equifax.com/cs/Satellite?pagename=esn3_detail (last visited: April 17, 2018); https://www.lifelock.com/store (last visited: April 17, 2018); https://www.experian.com/lp/identity-int-2.html?bcd=ad_c_sem_427_227524020234&k_id=3617713a-e501-4823-aa3d-f52aa65a4677&k_kw=kwd-302846930090&k_mt=e&pc=sem_exp_google&cc=sem_exp_google_ad_857683561_43214750053_227524020234_kwd-302846930090_e_1t1_3617713a-e501-4823-aa3d-f52aa65a4677&ref=identity&awsearchcpc=1&gclid=Cj0KCQjwttbWBRDyARIsAN8zhbL-EWaKj4tbyxIJiopf2p-4ueBwd8JRIZRnFnO2g9XI7lNfuIMQUckaAilAEALw_wcB (last visited: April 17, 2018).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. Bus. & Prof. Code § 17200, *et seq*.  Plaintiff alleges that ABM "violated Cal. Bus. And Prof. Code § 17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of 'unfair competition' as defined by Cal. Bus. Prof. Code § 17200." [Compl., ¶ 52.]  Plaintiff asserts a separate cause of action on behalf of himself and the putative Subclass for a violation of each of the three prongs under the UCL—unlawful business practices (Count II), unfair business practices (Count III), and fraudulent/deceptive business practices (Count VI).  [*See* Compl.]

24.     Under each of the UCL causes of action, Plaintiff alleges that she and the putative Subclass "were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above."  [Compl., ¶¶ 54, 60, and 66.]

25.     Further, as part of each of her three UCL causes of action, Plaintiff seeks, among other things, "restitution to Plaintiff and Class Members of money or property that ABM may have acquired by means of its [unlawful/unfair/fraudulent and deceptive] business practice" and "restitutionary disgorgement of all profits accruing to ABM because of its [unlawful/unfair/ fraudulent and deceptive] business practices…." [Compl., ¶¶ 56, 62, and 68.]

26.     Plaintiff's Complaint contains no allegations that would support or even suggest the amount in restitution and/or restitutionary disgorgement to which she or any of the putative Subclass members are allegedly entitled as a result of ABM's alleged violations of the UCL.  Therefore, ABM does not include in the calculation of the total amount in controversy restitution and/or restitutionary disgorgement.  However, when restitution and/or restitutionary disgorgement are combined with Plaintiff's and Class' compensatory damages under Plaintiff's negligence claim, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

27.  <u>Claim for Constitutional Invasion of Privacy</u>.  Plaintiff alleges that she and the putative Subclass "had a legally protected privacy interest in the Private Identifiable Information provided to ABM, that she and the Class "had a reasonable expectation of privacy as to the Personal Identifiable information they provided to ABM," and that "ABM's actions and inactions amounted to a serious invasion of the protected privacy interests of Plaintiff and the Class Members." [Compl., ¶¶ 71-73.]  Plaintiff further alleges that "ABM's Invasion of Plaintiff and the Class Members' reasonable expectation of privacy caused Plaintiff and the Class members to suffer damages." [*Id.* at ¶ 74.]

28.  As with Plaintiff's UCL causes of action, Plaintiff's Complaint contains no allegations that would support or even suggest the amount in damages she or any of the putative Subclass members allegedly sustained as a result of ABM's alleged invasion of privacy.  Therefore, ABM does not include in the calculation of the total amount in controversy Plaintiff's or the putative Class member's alleged invasion-of-privacy damages.  However, when Plaintiff's and the putative Class member's alleged invasion-of-privacy damages are combined with Plaintiff's and Class' compensatory damages under Plaintiff's negligence claim, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

29.  <u>Claim for Negligence *Per Se*</u>.  Plaintiff alleges that ABM was *per se* negligent because ABM violated California Civil Code § 1798.81.5, which, Plaintiff alleges, requires ABM to "provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Personal Information." [Compl., ¶¶ 77-78.]  Plaintiff further alleges that "[a]s a direct and proximate result of ABM's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial." [*Id.* at ¶ 81.]

30.  However, because negligence *per se* "is the application of an evidentiary presumption provided by California Evidence Code § 669" and not a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

stand-alone cause of action, (*Coppola v. Smith*, 935 F. Supp. 2d 993, 1016–17 (E.D. Cal. 2013), ABM does not include in the calculation of the total amount in controversy Plaintiff's or the putative Class member's alleged negligence-*per-se* damages.

31.  <u>Violation of State Data Breach Acts</u>.  Plaintiff alleges that "ABM's conduct, as alleged above, violated the data breach statutes of California, including California, Cal. Civ. Code §§ 17980 *et seq.*"  [Compl., ¶ 85.]  Plaintiff, on behalf of herself and the putative Subclass, seeks "all available remedies under Cal. Civ. Code § 1798.84, including but not limited to: (a) actual damages suffered by Class Members as alleged above; (b) statutory damages for ABM's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83…."  [Compl., ¶ 93.]

32.  California Civil Code § 1798.84(c) permits a plaintiff to recover "for a willful, intentional, or reckless violation of Section 1798.83…a civil penalty not to exceed three thousand dollars ($3,000) per violation."

33.  Therefore, the amount in controversy for Plaintiff's violation of state data breach acts cause of action, even assuming a per violation recovery of $160.00, is $5,218,880 (calculated as: 32,618 California residents notified of Cyberattack, times $160.00.)

34.  <u>Total Amount in Controversy</u>.  Based on the discussion above, the amount in controversy based just on alleged statutory damages and credit monitoring exceeds the $5 million CAFA minimum before ever taking into account other forms of compensatory damages, punitive damages, or attorneys' fees, which as discussed below adds even more to the total amount in controversy.

35.  <u>Other Claims</u>.  In addition to the damages discussed above, Plaintiff also requests punitive damages and injunctive relief (among other forms of relief not calculated above) for Class Members.  [Compl., Prayer for Relief.]  *See also Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001), holding modified by *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 L.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Ed. 2d 502 (2005) (holding that the potential for punitive damages may still be considered for purposes of amount in controversy).  No allegations in the Complaint allow ABM to calculate the amount of these alleged damages and relief. However, ABM points out the allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

### ATTORNEY'S FEES

36.     When the underlying substantive law provides for the award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The Court may take into account reasonable estimates of attorneys' fees when analyzing disputes over the amount in controversy. *See Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D.Cal.2002).  Plaintiff has sought attorneys' fees "pursuant to Cal. Code Civ. Proc. § 1021.5" and "under Cal. Civ. Code § 1798.84(g)." [Compl., ¶¶ 56, 62, 68, and 94.]  They should therefore be included in analyzing the amount in controversy.

37.     In the Ninth Circuit, 25% of the award has been used as a "benchmark" for attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Using this benchmark, attorneys' fees, when added to the amounts discussed above, further increase the amount in controversy for alleged liability exposure above the jurisdictional minimum for removal.

38.     Accordingly, diversity, class size, and amount in controversy requirements of the Class Action Fairness Act are also satisfied.  ABM has properly removed the State Court Action to this Court.

### NOTICE OF INTERESTED PARTIES

39.     Pursuant to Local Rule 7.1-1, a Notice of Interested Parties is being filed concurrently with this Notice of Removal.

### NOTICE

1    40.    As required by 28 U.S.C. § 1446(d), ABM is providing written notice

2  of the filing of this Notice of Removal to Plaintiff, and is filing a copy of this

3  Notice of Removal with the Clerk of the Superior Court of the State of California,

4  County of Los Angeles, Central District.

5        Respectfully submitted this 10th day of May, 2018.

6

7  DATED: May 10, 2018                        **BAKER & HOSTETLER LLP**

8

9                                             By:_____

10                                                Teresa C. Chow
                                                  Matthew D. Pearson
11
                                              Attorneys for Defendant
12                                            ABM INDUSTRIES
                                              INCORPORATED
13                                            (erroneously sued as ABM
                                              INDUSTRIES, INC.)
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF REMOVAL